IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY LYNN ANDERSON, | § | |
| #55662-177, | § | |
| | § | |
| Movant, | § | |
| | § | No. 3:22-cv-00037-M |
| v. | § | No. 3:17-cr-00222-M-1 |
| | § | |
| UNITED STATES of AMERICA, | § | |
| | § | |
| Respondent. | § | |

| | | |
|---|---|---|
| ROCKY FREELAND ANDERSON, | § | |
| #55661-177, | § | |
| | § | |
| Movant, | § | |
| | § | No. 3:22-cv-00039-M |
| v. | § | No. 3:17-cr-00222-M-2 |
| | § | |
| UNITED STATES of AMERICA, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM OPINION AND ORDER

Movants Terry Lynn Anderson and Rocky Freeland Anderson filed separate motions to vacate, set aside, or correct their sentences under 28 U.S.C. § 2255. For the following reasons, the Andersons' § 2255 motions are DENIED.

I.

Terry Anderson owned Anderson Optical and Hearing Aid Center (AOHAC), an optical and hearing aid business in North Texas, and he employed his son, Rocky Anderson, in this business. Both Terry and Rocky are licensed hearing aid fitters and dispensers, but they are not audiologists or medical doctors. In 2012 and 2013, AOHAC submitted more than 2,000 claims for hearing aids for American Airlines employees and

family members to Blue Cross Blue Shield of Texas (BCBS), which administered the American Airlines self-funded employee health insurance plan. American Airlines and BCBS suspected AOHAC of submitting fraudulent claims and contacted the FBI. Following a criminal investigation into AOHAC, a federal grand jury returned a 15-count indictment charging the Andersons with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; health care fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2; and aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 1028A and 2.

In 2018, a jury found Terry guilty on all counts and found Rocky guilty on all but two substantive counts of health care fraud. However, the Court granted the Andersons' motions for acquittal in part and entered judgments notwithstanding the verdicts as to the conspiracy charge, as well as one substantive count of health care fraud. Then, the Court held sentencing hearings for the Andersons on June 21 and August 14, 2019. The Court sentenced Terry to 96 months' imprisonment and sentenced Rocky to 84 months' imprisonment. The Court also ordered the Andersons to pay millions in restitution.

The Andersons both appealed, but the Fifth Circuit affirmed the Court's judgments. *United States v. Anderson*, 822 F. App'x 271 (5th Cir. 2020) (per curiam) (unpublished version); *United States v. Anderson*, 980 F.3d 423 (5th Cir. 2020) (published version, issued after the Fifth Circuit granted the Government's motion to publish its opinion). The Andersons then filed a joint petition for panel rehearing, which the Fifth Circuit denied. *See United States v. Anderson*, No. 19-10963 (5th Cir.) (per curiam).

Thereafter, the Andersons, through counsel, filed their § 2255 motions (CV ECF No. 1), memorandums (CV ECF No. 2), supplemental memorandums (CV ECF No. 6), and attachments (CV ECF Nos. 5, 7, 24),[1] in which they argue:

(1)    newly discovered evidence demonstrates their convictions were based on false evidence in violation of due process;

(2)    exculpatory evidence was known to Government agents but not revealed to the defense in violation of due process;

(3)    newly discovered evidence shows they are innocent;

(4)    newly discovered evidence shows the evidence is insufficient to support their convictions;

(5)    newly discovered evidence shows their convictions are a miscarriage of justice;

(6)    new legal authority shows the sufficiency of the evidence was not analyzed correctly;

(7)    they were sentenced based on false information, arguments, and evidence; and

(8)    the hearing aid company, Eargo, Inc., has announced that the Department of Justice's criminal investigation of their insurance practices has ended.

The Government responds that the Andersons are procedurally barred from raising some of these grounds on collateral review, each of these grounds is meritless, and the Court should deny the motions without an evidentiary hearing. The Andersons filed a reply.

Then, on June 26, 2023, without leave of court or the Government's consent, the Andersons filed supplemental § 2255 motions, asserting a new claim under the Supreme

---

[1] For purposes of this Memorandum Opinion and Order, "CR ECF" refers to the Andersons' underlying criminal action, case number 3:17-cr-00222-M, and "CV ECF" refers to the Andersons' civil actions, case numbers 3:22-cv-00037-M-BT and 3:22-cv-00039-M-BT.

Court's decision in *Dubin v. United States*, 599 U.S. 110 (2023). June Supp. Mot. (CV ECF No. 32); *see also* Reply (CV ECF No. 41). The Andersons argue that their aggravated identity theft convictions are "invalid" because the use of another person's means of identification was not the crux of the alleged criminal conduct in their cases. June Supp. Mem. 10 (CV ECF No. 33); *see also* Reply 2 (CV ECF No. 41). Rather, the Andersons characterize the crux of their criminal activity as health care fraud. Reply 4 (CV ECF No. 41). The Government urges the Court to deny the Andersons leave to amend their § 2255 motions because their new claim is procedurally barred, meritless, and not cognizable on collateral review, and thus amendment would be futile.

The Andersons' § 2255 motions are now fully briefed and ripe for determination.

II.

A.      The Andersons have not shown a *Brady* or *Giglio* violation.

In their first claim, the Andersons argue that they have newly discovered evidence that shows that their convictions were based on false evidence in violation of due process. Mot. 4 (CV ECF No. 1); *see also* Mem. 27–28 (CV ECF No. 2). And in their second claim, the Andersons argue that some of the information addressed in their first claim was known by Government agents at the time of their trial but was not revealed to the defense. Mot. 5 (CV ECF No. 1); *see also* Mem. 28–30 (CV ECF No. 2). Thus, the Andersons contend, the Government violated *Brady* and *Giglio* when it failed to disclose: (1) the U.S. Food and Drug Administration (FDA) was promulgating rules and regulations for over-the-counter hearing aids; (2) the Texas Department of Licensing and Regulation does not require a licensed hearing aid fitter and dispenser to perform particular tests before dispensing a hearing aid; (3) some mail-order hearing aid companies dispense hearing aids without

requiring examination or testing from a hearing professional; and (4) Eargo, Inc., a hearing aid distributor, is no longer under investigation by the Department of Justice's Criminal Division (eighth claim).

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution must turn over evidence favorable to the accused upon request. *Id.* at 87. To show a *Brady* violation, a movant must demonstrate: (1) the prosecution suppressed evidence; (2) the suppressed evidence was favorable to him; and (3) the suppressed evidence was material. *See Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995); *see also Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."); *United States v. Agurs*, 427 U.S. 97, 104 n.10 (1976) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.") (quoting *Brady*, 373 U.S. at 87).

*Giglio* applies *Brady* to evidence affecting the credibility of key government witnesses. *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted)*; see also United States v. Wall*, 389 F.3d 457, 472 (5th Cir. 2004) ("The knowing use of false testimony is commonly referred to as a *Napue* violation[.]"). A movant is denied due process when the government uses perjured testimony at trial or allows false testimony to go uncorrected. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *see also Anderson v. Davis*, 2021 WL 3040771, at *9 (N.D. Tex. May 13, 2021).

1. The FDA Regulations

The Andersons argue that the Government violated *Brady* and *Giglio* by failing to disclose that the FDA was studying potential new rules allowing over-the-counter hearing aids, which was exculpatory evidence known to the prosecution team. Mem. 28–30 (CV ECF No. 2). They further argue this evidence should have been disclosed, and that if it had not been wrongfully withheld, they would have been acquitted at trial. *Id*. But the Andersons did not raise this claim on direct appeal, and thus, they are barred from raising it now on collateral review. *See* Anderson, 822 F. App'x at 271 (recognizing on the Andersons' direct appeal that "[t]he only appellate issues concern the sufficiency of the evidence").

When a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the movant can show cause for his failure to raise the claim on direct appeal and actual prejudice, or that he is actually innocent. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); *see also* U*nited States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("The Supreme Court has emphasized repeatedly that a 'collateral challenge may not do service for an appeal.'") (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A movant bears the burden of demonstrating either cause and actual prejudice, or that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

On August 18, 2017, prior to the Andersons' trial, the FDA Reauthorization Act of 2017 (FDARA) took effect. Among other things, the FDARA instructed the FDA to promulgate new rules for hearing aids that could be purchased without a prescription or a doctor's visit. *See* https://www.fda.gov/regulatory-information/selected-amendments-fdc-

act/fda-reauthorization-act-2017-fdara (last visited April 5, 2024); *see also* App. Ex. C 1-87 (CV ECF No. 3-3) (information issued on October 19, 2021 about the regulations issued by the FDA about over-the-counter hearing aids). The Andersons went to trial in late February and early March of 2018, so they could have—and should have—raised their *Brady* and *Giglio* arguments before this Court during trial or on direct appeal. And they have not demonstrated cause and prejudice or actual innocence to excuse their procedural default. Although the Andersons assert that they are innocent of the crimes for which they were convicted, Mem. 30–31 (CV ECF No. 2), their assertion is conclusory, and the claim lacks merit. For these reasons, the Andersons' claim is procedurally defaulted.

Even if their argument was not procedurally defaulted, it fails on the merits because they have not demonstrated the Government "suppressed" evidence of the FDA's rule-making processes. *See United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011) (To demonstrate a *Brady* violation, the defendant must prove the prosecution suppressed evidence.). To be suppressed, "the evidence must not have been discoverable through the defendant's due diligence." *Id*. at 588. The FDARA was enacted as public law, and it instructed the FDA to promulgate new rules for hearing aids that could be purchased without a prescription or a doctor's visit. The Andersons argue evidence that the FDA was studying potential new rules to approve over-the-counter hearing aids was suppressed. But this argument fails because the information about the FDA and the new rules was publicly available, and the Andersons could have discovered the evidence through the exercise of due diligence. *See Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.") (quoting *United States v.*

*Jackson*, 6 F.3d 911, 918 (2d Cir. 1993)); *see also Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994) ("A *Brady* violation does not arise if the defendant, using reasonable diligence, could have obtained the information[.]"); *Blackmon v. Scott*, 22 F.3d 560, 564–65 (5th Cir. 1994) ("The state is not required to furnish a defendant with exculpatory evidence that is fully available to the defendant or that could be obtained through reasonable diligence."). The Andersons claim that the FDA's "knowledge is imputed to the prosecution," Mem. 30 (CV ECF No. 2), because the FDA is a governmental agency, but this argument lacks merit because they have not shown any evidence was suppressed, as required under *Brady*. *See United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994) (recognizing there may be "[a] duty to search files maintained by governmental agencies closely aligned with the prosecution" in certain circumstances, but it is only where the government "has knowledge of and access to exculpatory information as defined in *Brady* . . . [that] the prosecutor must disclose it to the defense") (internal quotation marks omitted). For these reasons, the Government did not violate *Brady* or *Giglio* by failing to disclose that the FDA was studying potential new rules to approve over-the-counter hearing aids.

Moreover, the fact the FDA was studying potential new rules to approve over-the-counter hearing aids is information that is neither favorable nor material to the Andersons. Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). And "[t]he mere possibility that an item of

undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109–10.

Here, the Andersons argue the fact that "authoritative people within the United States government," specifically the FDA, were considering new regulations for over-the-counter hearing aids "was highly material and went to the heart of the prosecution['s] theory." Mem. 28–29 (CV ECF No. 2); *see also* CR ECF No. 26 (superseding indictment). But this argument ignores the fact that the Andersons were convicted of defrauding BCBS by submitting false and misleading insurance claims, not for violating FDA regulations. The Andersons' crime—seeking reimbursement from their customers' insurance company for hearing aids—is separate and distinct from their ability as hearing aid dispensers to sell over-the-counter hearing aids. Indeed, on appeal, the Andersons argued there was insufficient evidence to support their convictions because any implicit misrepresentation was immaterial to BCBS's decision to pay the insurance claims. *Anderson*, 980 F.3d at 425, 428–29. But the Fifth Circuit disagreed and concluded "the jury heard and must have accepted testimony that BCBS would not pay for a service or item that was not medically necessary." *Id*. at 431–32 (citing *United States v. Umawa Oke Imo*, 739 F.3d 226, 235 (5th Cir. 2014)). The Andersons' argument fails because they cannot demonstrate that evidence the FDA was studying potential new rules to approve over-the-counter hearing aids was either favorable to their defense or material to their conviction.

2.  The Texas Department of Licensing and Regulation's Guidance

The Andersons next argue the Texas Department of Licensing and Regulation issued clarification from General Counsel Brad Bowman on June 20, 2018, which

addressed whether Texas law requires hearing aid fitters and dispensers to perform specific tests prior to dispensing hearing aids. Mem. 17–18, 23–23 (CV ECF No. 2); *see also* App. Ex. E (CV ECF No. 3-5). The Andersons contend that the failure to disclose the clarification violated *Brady* and *Giglio* because it was contrary to any evidence, argument, or implication by the Government during trial that, under their Texas licenses, the Andersons were required to perform all the tests the Government claimed were mandatory. Mem. 24 (CV ECF No. 2). In support of this argument, the Andersons refer to the following statement in the Government's brief before the Fifth Circuit:

> The hearing tests that Terry and Rocky administered to the employees were not the fulsome battery of tests that the State licensing authority required and that expert witnesses testified were required before making a representation about the medical necessity of hearing aids.

*Id.* (citing App. Ex. K 1 (CV ECF No. 3-11)).

Like the Andersons' FDA regulations argument, this argument is procedurally defaulted because the Andersons could have brought it on direct appeal—but did not. *See Anderson*, 822 F. App'x at 271 (recognizing on the Andersons' direct appeal that "[t]he only appellate issues concern[ed] the sufficiency of the evidence"); *see also Placente*, 81 F.3d at 558; *Shaid*, 937 F.2d at 232. Likewise, the Andersons have failed to overcome this procedural default by showing cause and actual prejudice, or that they are actually innocent. *See Bousley*, 523 U.S. at 622; *see also Murray*, 477 U.S. at 485. The Andersons refer to a guidance letter, Mem. 24 (CV ECF No. 2), written on June 20, 2018, a year *before* their sentencings took place in June and August 2019. *See* App. Ex. E (CV ECF No. 3-5); (CR ECF No. 174). The Andersons could have and should have raised this argument on direct appeal, but did not. Accordingly, this argument is procedurally defaulted.

Even if the Andersons' argument was not procedurally defaulted, it fails on the merits because the Andersons do not allege or demonstrate the Government suppressed information that did not exist until after judgment was entered. In addition, their argument fails because the information at issue in the guidance letter is neither favorable nor material. This is so because the conditions in Texas under which a hearing aid fitter can lawfully dispense a hearing aid are factually and legally distinct from the conditions under which a hearing aid fitter can file an insurance claim for that hearing aid. For these reasons, this argument fails on the merits.

   3.  Mail Order Hearing Aid Evidence

Next, the Andersons argue the Government's failure to disclose the existence of mail order hearing aid companies constituted violations of *Brady* and *Giglio*. Mem. 25, 27–28 (CV ECF No. 2). However, like their prior arguments, this one is procedurally defaulted. *See Anderson*, 822 F. App'x at 271 (recognizing "[t]he only appellate issues concern the sufficiency of the evidence"); *see also Placente*, 81 F.3d at 558; *Shaid*, 937 F.2d at 232. And the Andersons have failed to overcome this procedural default by showing cause and actual prejudice, or that they are actually innocent. *See Bousley*, 523 U.S. at 622; *see also Murray*, 477 U.S. at 485. One of the mail-order companies that the Andersons refer to, Eargo, Inc., was founded in late 2012, which is more than five years prior to their convictions. App. Ex. F 4 (CV ECF No. 3-6). This argument has been procedurally defaulted.

This argument also fails because it is fatally conclusory. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue.") (quoting *United States v. Woods*, 870 F.2d

11

285, 288 n.3 (5th Cir. 1989)). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . [and] mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983)); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (noting that where a habeas petitioner fails to brief an argument adequately, it is considered waived) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Andersons fail to show that the Government suppressed this publicly available information, and they fail to explain how the information was favorable or material to their defense. Moreover, even if some of the insurance policies now cover the expenses for mail order hearing aids, there is no evidence suggesting that American Airlines' insurance plan, the plan the Andersons were convicted of defrauding, is such a policy, which would make the evidence material to their cases. Therefore, this argument fails on the merits.

    4. The Eargo, Inc. Investigation

    The Andersons note that Eargo, Inc., a mail order hearing aid distributor, announced that as of January 6, 2022, it was no longer under investigation by the Department of Justice's Criminal Division. Supp. Mem. 2 (CV ECF No. 6); Attach. 2 (CV ECF No. 5) (eighth claim); *see also* Attach. Ex. L (CV ECF No. 7-1) (article from Dow Jones Newswires). According to the Andersons, Eargo, Inc. has been selling mail order hearing aids without the necessity of seeing a hearing specialist or having any hearing

testing conducted, similar to the way the Andersons conducted business at AOHAC, but the Andersons allege their situation is different because the Andersons actually saw clients and conducted hearing tests. Supp. Mem. 2 (CV ECF No. 6). The Andersons conclude, "[t]he Justice Department investigation [ ] is likely chock full of exculpatory evidence that shows the invalidity of the prosecution and conviction of the Andersons," which amounts to newly discovered evidence that supports each of the grounds raised in their § 2255 motions. *Id*. But this bare assertion—that the Justice Department's decision not to prosecute Eargo, Inc. shows the Andersons' prosecution was invalid—fails to raise a constitutional issue under § 2255. *See Pineda*, 988 F.2d at 23. ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue.") (quoting *Woods*, 870 F.2d at 288 n.3).

Moreover, the information about the Justice Department's Eargo, Inc. investigation is immaterial to the Andersons' convictions. As this Court has previously held on more than one occasion, the Eargo, Inc. investigation is unrelated to the Andersons' criminal trial. *See* Mem. Op. (CR ECF No. 271 at 4) (denying the Andersons' motion for a new trial and rejecting their *Brady* claim regarding the Eargo, Inc. investigation); (CV ECF No. 29 at 4) (denying the Andersons' motions seeking Eargo, Inc.'s investigation information as discovery in this case); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) (recognizing "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute," and "the decision to prosecute is particularly ill-suited to judicial review") (quoting *United States v. Goodwin*, 457 U.S. 368, 380, n.11 (1982)).

For these reasons, this argument lacks merit, and the Andersons' eighth claim fails on the merits.

B.      The Andersons' actual innocence claim is not cognizable under § 2255.

In the Andersons' third claim, they argue they have "[n]ewly discovered evidence" that demonstrates they are "innocent of this offense."  Mot. 7 (CV ECF No. 1); *see also* Mem. 30–31 (CV ECF No. 2). They assert a bare actual innocence claim, as opposed to asserting actual innocence as a gateway to have the Court consider otherwise barred constitutional claims. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) (distinguishing procedural actual innocence with substantive claims of actual innocence which are cognizable under Texas state habeas law).The Andersons recognize the Court is legally constrained in its ability to grant relief on an actual innocence claim, but they raise the argument in anticipation of the day when the Supreme Court or Fifth Circuit Court of Appeals recognizes actual innocence as a ground for relief under § 2255. Mem. 31 (CV ECF No. 2).

This actual innocence claim is not cognizable under § 2255. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (§ 2255 motions can raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice); *see also Robertson v. United States*, 2021 WL 662108, at *2 (N.D. Tex. Feb. 19, 2021) (citing *Williamson*, 183 F.3d at 462). The Andersons' claim is neither jurisdictional nor Constitutional; at most, it consists of allegations they have newly discovered evidence that private companies are selling mail order hearing aids, which undercuts the Government's criminal case against them. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) ("[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional

magnitude which may not be raised for the first time on collateral review[.]"). Accordingly, the Andersons' third claim is not cognizable in these § 2255 actions.

C.    The Andersons' fourth, fifth, and sixth claims are barred by the law-of-the case doctrine.

In their fourth claim, the Andersons argue that newly discovered evidence shows the evidence against them is insufficient to support their convictions. Mot. 8 (CV ECF No. 1); *see also* Mem. 30–31 (CV ECF No. 2). The Andersons argue in their fifth claim that newly discovered evidence shows their convictions are a miscarriage of justice. Mot. 10 (CV ECF No. 1); *see also* Mem. 31 (CV ECF No. 2). And in their sixth claim, the Andersons argue that new legal authority shows the sufficiency of the evidence was not analyzed "correctly." Mot. 12 (CV ECF No. 1); *see also* Mem. 31–35 (CV ECF No. 2) (relying on *United States v. Nora*, 988 F.3d 823 (5th Cir. 2021) (reversing the defendant's criminal convictions after finding they were based on insufficient evidence)).

A claim "raised and rejected on direct appeal" cannot not be raised in a § 2255 motion on collateral review. *See United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *see also United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions."); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013) (per curiam) (affirming denial of § 2255 motion under law-of-the-case doctrine after the appellate court dismissed defendant's direct appeal as barred by an appeal waiver). The law-of-the-case doctrine generally precludes reexamination of issues of law or fact decided on appeal. *USPPS, Ltd. v. Dennison Corp.*, 647 F.3d 274, 282 (5th Cir. 2011).

The Andersons' fourth, fifth, and sixth claims were raised on direct appeal. *See Anderson*, 822 F. App'x at 275 (stating the Andersons' "only appellate issues concern[ed] the sufficiency of the evidence"). The Fifth Circuit concluded, "There is direct or circumstantial evidence linking both Andersons to the clients identified above. It would not be irrational for a jury to find the evidence was sufficient to convict the Andersons for aggravated identity theft." *Id*. at 280.

The Andersons contend that consistent with the Eighth Circuit Court of Appeals' decision in *English v. United States*, 998 F.2d 609 (8th Cir. 1993), they should be allowed to relitigate their sufficiency of the evidence claims. Mem. 32 (CV ECF No. 2) (relying on *United States v. Palumbo*, 608 F.2d 529 (3d Cir. 1979), for additional support). The Andersons further contend that for the reasons outlined in their memoranda, the Court's decision denying their motion for judgment of acquittal, and the Fifth Circuit's opinion affirming their convictions are "in fact, clearly erroneous and resulted in a manifest injustice." Mem. 33 (CV ECF No. 2). The Andersons conclude that to the extent their fourth, fifth, and sixth claims were resolved on direct appeal, "that decision is not untouchable." *Id*.

In *English*, the Eighth Circuit Court of Appeals recognized that a movant generally is precluded from using a § 2255 motion to collaterally attack the sufficiency of the evidence where the issue was raised and resolved on direct appeal. *English*, 998 F.2d at 612–13. The Eighth Circuit went on to recognize that when there has been an intervening change in the law or newly discovered evidence, a claim resolved on direct appeal can be considered on collateral review. *Id*. at 613. In *United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002), the Fifth Circuit Court of Appeals held that the law-of-the-case doctrine is not

an absolute "jurisdictional rule," but rather a "discretionary practice." *Id*. at 657. The Fifth Circuit further held that the application of the law-of-the-case doctrine has three exceptions: "(1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." *Id*.

Even if *English*, an Eighth Circuit case, was authoritative in this Circuit, the Andersons' argument in support of overcoming the law-of-the-case doctrine still fails because they have not shown there has been an intervening change in the law or newly discovered evidence. *See English*, 998 F.2d at 613 (providing exceptions to the general rule a movant is precluded from using § 2255 to collaterally attack a claim raised and resolved on direct appeal). The Andersons do not attempt to demonstrate that there has been an intervening change in the law. However, they do argue that they have newly discovered evidence, and it "consists of a variety of pieces of information that shows that performing a battery of hearing tests is not necessary to determine a person could benefit from a hearing aid." Mem. 17 (CV ECF No. 2). Specifically, the Andersons refer to the new rules and regulations issued by the FDA in October 2021 approving over-the-counter hearing aids. *Id*. But, as discussed above, the rules and regulations issued by the FDA do not constitute newly discovered evidence in this case. The FDARA was signed into law in August 2017, and it instructed the FDA to promulgate new rules for hearing aids that could be purchased without a prescription or a doctor's visit. The Andersons' trial was held in late February and early March 2018, almost a year later.

The Andersons' argument to overcome the law-of-the-case doctrine also fails under *Matthews*, a case from the Fifth Circuit, because they have not demonstrated their case falls

within any of the three exceptions set forth therein. *Matthews*, 312 F.3d at 657. In addition, as the Government argues, the Andersons have not provided a case demonstrating the exceptions set forth in *Matthews* apply to claims on collateral review, such as the claims raised by the Andersons in this § 2255 case. Resp. 15 (CV ECF No. 14). The closest case the Government briefs is *United States v. Goudeau*, 512 F. App'x 390, 393–94 (5th Cir. 2013) (per curiam), a § 2255 case on appeal before the Fifth Circuit. But in *Goudeau*, the Fifth Circuit addressed the law-of-the-case doctrine and did not apply the exceptions set forth in *Matthews*. *Id*. And the Fifth Circuit determined that "[t]he decision in Goudeau's direct appeal constitute[d] law of the case for purposes of his § 2255 action." *Id*. at 393 (citing *United States v. Troutman*, 16 F.3d 1215, 1994 WL 57398, at *4 (5th Cir. 1994) (unpublished)). The Fifth Circuit concluded that it could not consider an issue disposed of in a previous appeal at the § 2255 stage. *Id*. (citing *Kalish*, 780 F.2d 506, 508 (5th Cir. 1986)); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

For these reasons, the Andersons' attempts to avoid the impact of the law-of-the-case doctrine must fail. The Andersons' fourth, fifth, and sixth claims are barred from re-litigation by the law-of-the-case doctrine.

D.   <u>The Court did not violate the Andersons' due process rights at sentencing.</u>

The Andersons argue in their seventh claim that they were sentenced based on false information, arguments, and evidence. Mot. 14 (CV ECF No. 1); *see also* Mem. 35–36 (CV ECF No. 2). Specifically, they contend the Court was "misled at sentencing into believing people could not be found in need of a hearing aid unless they had a full battery of hearing tests." Mem. 35 (CV ECF No. 2). The Andersons further contend "newly

discovered evidence shows [ ] that the government's argument [at sentencing] was based on a completely false premise." *Id.* at 36.

This seventh claim is procedurally defaulted. When a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the movant can show cause for his failure to raise the claim on direct appeal and actual prejudice, or that he is actually innocent. *Placente*, 81 F.3d at 558; *see also Shaid*, 937 F.2d at 232. The Andersons did not raise this seventh claim on direct appeal. *See Anderson*, 822 F. App'x at 271 (recognizing "[t]he only appellate issues concern[ed] the sufficiency of the evidence"). And they have not demonstrated cause and prejudice or actual innocence to excuse the procedural default. *See Bousley*, 523 U.S. at 622; *see also Murray*, 477 U.S. at 485. Thus, the seventh claim fails.

Moreover, the Andersons' argument is belied by the record. At sentencing on August 14, 2019, the Court took "into account that there [were] some persons in this group of patients or customers who [were] satisfied with their results and their hearing aids . . . "and the Court [applied] what it [thought] [was] a reasonable reduction based upon that evidence. And so the Court [reduced] the amounts across the board by ten percent to account for potential errors in the calculation and for the inclusion of people who had legitimate hearing loss and received hearing aids as a result." Elec. Trans. 72 (CR ECF No. 203). The Court accepted the argument the Andersons now raise and reduced their sentences accordingly. The Andersons cannot now show that their sentences were based on false information, and their seventh claim is denied.

E.     The Andersons are not entitled to amend their § 2255 motions to include a *Dubin* claim.

The Andersons also filed supplemental § 2255 motions, in which they attempt to raise a new claim under the Supreme Court's decision in *Dubin v. United States*, 599 U.S. 110 (2023). The Andersons did not seek leave of court or consent from the Government prior to filing their supplemental § 2255 motions. And, as explained below, the Andersons procedurally defaulted their *Dubin* claim, and they have not shown cause and prejudice or actual innocence to overcome this default. Thus, it would be futile to grant the Andersons leave to amend their § 2255 motions to add a *Dubin* claim.

Federal Rule of Civil Procedure 15 applies in § 2255 proceedings. *Mayle v. Felix*, 545 U.S. 644, 655 (2005); *see also United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002). Under Rule 15, the Court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is by no means automatic, *Jones v. Robinson Prop Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2006) (citation omitted), but the policy underlying the Federal Rules "is to permit liberal amendment to facilitate determination of claims on the merits and prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (citations omitted). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994 (citing *Dussouy*, 660 F.2d at 598). A court can also refuse to grant leave to amend when the filing of an amendment would be futile. *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014).

The Andersons raise only one claim—the *Dubin* claim—in their supplemental §

2255 motions. In *Dubin*, the petitioner challenged his conviction for aggravated identity

theft under 18 U.S.C. § 1028A. *Dubin*, 599 U.S. at 113. The Supreme Court held that under

§ 1028A, a "defendant 'uses' another person's means of identification 'in relation to' a

predicate offense when this use is at the crux of what makes the conduct criminal." *Id*. at

131. The Supreme Court further held that under § 1028A, "the means of identification

specifically must be used in a manner that is fraudulent or deceptive." *Id*. at 132. But the

Supreme Court held that because the petitioner's health care fraud was based on a

misrepresentation about the qualifications of his employee, and not the use of the patient's

name, the petitioner's conduct failed to violate § 1028A. *Id*.

Following *Dubin*, the Andersons contend that their convictions for aggravated

identity theft under § 1028A are no longer valid. June Supp. Mem. 10 (ECF No. 33); *see

also* Reply 2 (CV ECF No. 41). Specifically, the Andersons argue that the use of another

person's means of identification was not at the crux of what allegedly made their conduct

criminal. However, the Andersons' *Dubin* claim fails because it was procedurally defaulted

when they failed to raise it on direct appeal. *See Cervantes*, 132 F.3d at 1109 ("Following

a conviction and exhaustion or waiver of the right to direct appeal, we presume a defendant

stands fairly and finally convicted.") (citing *Shaid*, 937 F.2d at 231–32). As set forth above,

when a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted

and can only be considered under § 2255 if the movant can show cause for his failure to

raise the claim on direct appeal and actual prejudice, or that he is actually innocent.

*Placente*, 81 F.3d at 558. The Andersons did not raise their argument under *Dubin* on direct

appeal. *See Anderson*, 980 F.3d at 423. Nor have they shown cause and prejudice or actual

innocence. *See United States v. Vargas-Soto*, 35 F.4th 979, 993 (5th Cir. 2022) (addressing the prerequisites to overcoming a procedural default) (citing *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019) (per curiam)).

Although the Andersons filed their direct appeal before the Supreme Court issued its decision in *Dubin*, they cannot show cause for failing to bring the claim on direct appeal because they cannot demonstrate the claim was "so novel that its legal basis [was] not reasonably available to counsel" when the Andersons appealed their convictions. *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)); *see also Vargas-Soto*, 35 F.4th at 993. The Fifth Circuit Court of Appeals heard the *Dubin* case before Dubin appealed to the Supreme Court. *See United States v. Dubin*, 27 F.4th 1021 (5th Cir. 2022) (vacated and remanded); *United States v. Dubin*, 982 F.3d 318 (5th Cir. 2020) (rehearing en banc granted and vacated). And the Andersons—who were convicted in the Northern District of Texas, which obviously is within the Fifth Circuit—cannot demonstrate the arguments made by the petitioner in *Dubin* before the Supreme Court were "so novel" that they were "not reasonably available to counsel." *Bousley*, 523 U.S. at 622; *see also Jones v. United States*, 2022 WL 2657337, at *2 (N.D. Tex. June 2, 2022) ("Jones has failed to demonstrate that the legal basis for his [ ] claims was not reasonably available to him when his case was on direct appeal."), *rec. accepted*, 2022 WL 2651971 (N.D. Tex. July 8, 2022).

The Andersons have procedurally defaulted their *Dubin* claim, and they have not shown cause and prejudice or actual innocence to overcome this default. Thus, it would be futile to grant the Andersons leave to amend their § 2255 motions to add a *Dubin* claim. *See Varela*, 773 F.3d at 707.

The Government argues that leave to amend would also be futile because the Andersons' *Dubin* claim fails on the merits. Because the Andersons have procedurally defaulted their *Dubin* claim, the Court pretermits consideration of this additional argument.

F.      The Andersons are not entitled to an evidentiary hearing.

Last, the Andersons argue they are entitled to an evidentiary hearing on their § 2255 motions. Mem. 36–37 (CV ECF No. 2). With a § 2255 motion, an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (citing *Sosa v. United States*, 550 F.2d 244, 250 (5th Cir. 1977)). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)); *see also Cervantes*, 132 F.3d at 1110. A district court's decision not to hold an evidentiary hearing is a matter of discretion. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citing *Cervantes*, 132 F.3d at 1110).

As discussed, the record in this case demonstrates the Andersons are entitled to no relief. Therefore, a hearing is not warranted. *See* 28 U.S.C. § 2255(b); *see also Hughes*, 635 F.2d at 451.

Conclusion

For the reasons stated, the Andersons' § 2255 motions are DENIED.

SO ORDERED.
Signed April 23, 2024.

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

23